# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                            Case No. 06-Cr-023

ANTHONY N. CERVERA,
FRANK J. ZEIDLER,
JOHN T. MARTINEZ and
OTILIO ROSARIO, JR.

    Defendants.

## RECOMMENDATION TO THE HONORABLE CHARLES N. CLEVERT RE DEFENDANT CERVERA'S MOTIONS TO SUPPRESS

## NATURE OF THE CASE

On February 7, 2006, a federal grand jury sitting in the this district returned a two-count indictment against defendants Anthony N. Cervera, Frank J. Zeidler, John T. Martinez and Otilio Rosario, Jr. Count One charges defendants Cervera, Zeidler and Martinez with conspiring to possess with intent to distribute 500 grams or more of a mixture and substance containing cocaine and 100 grams or more of a mixture and substance containing marijuana in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). Count Two charges all defendants with knowingly and intentionally possessing with intent to distribute 500 grams or more of a mixture and substance containing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

On March 24, 2006, defendant Cervera (hereinafter the defendant) appeared before United States Magistrate Judge Aaron E. Goodstein and entered a plea of not guilty. Pursuant to the pretrial scheduling order, the defendant filed a motion to suppress evidence seized

pursuant to an invalid search warrant (Docket #39) and a motion to suppress statements. (Docket #40).

By letter dated April 27, 2006, the government stated that it did not intend to introduce evidence recovered from the search at 1602 S. 53rd Street, West Milwaukee, Wisconsin, on March 27, 2002. The defendant's motion to suppress evidence seized pursuant to the state search warrant sought suppression of this evidence. Based on the position of the government, the defendant agreed that this motion to suppress evidence seized pursuant to the invalid search warrant was moot. On May 5, 2006, at the evidentiary hearing conducted in case, the court denied the defendant's motion to suppress evidence seized pursuant to an invalid search warrant (Docket #39) as moot. The defendant's remaining motion to suppress statements will be addressed herein.

## **MOTION TO SUPPRESS STATEMENTS**

Defendant Cervera moves the court for an order excluding as evidence at trial all statements allegedly made by him to police officers or other government law enforcement officials on October 27, 2003. On May 5, 2006, the court conducted an evidentiary hearing on the defendant's motion to suppress statements. Corporal Daniel DiTorrice of the West Allis Police Department (WAPD) testified at that hearing. Based upon the testimony and evidence adduced at the hearing, the government now makes the following findings of fact.

### **Findings of Fact**

On October 27, 2003, law enforcement officers executed a search warrant and during the search, at approximately 3:00 p.m., the defendant was placed under arrest. The defendant was transported to the WAPD. At approximately 5:55 p.m. on October 27, 2003, Corporal Daniel DiTorrice of the WAPD began to interview the defendant. Prior to his interview with the

-2-

Case 2:06-cr-00023-CNC   Filed 05/10/06   Page 2 of 9   Document 50

defendant, Corporal DiTorrice had been involved in many drug investigations, but not in many long term drug investigations. Although Corporal DiTorrice currently is assigned to the Milwaukee Metropolitan Drug Enforcement Group, he was not in that unit in October of 2003. He had been involved with law enforcement officers who had dealt with confidential informants prior to October 2003.

Before the interview commenced, Corporal DiTorrice read the defendant his <u>Miranda</u>[1] rights verbatim from an Advice of Rights card provided by the WAPD. He read both sides of the card to the defendant. He specifically asked the defendant if he understood his right as they were explained to him. He also asked: "Having these rights in mind, do you wish to talk to us now?" <u>See</u> Exhibit 1. The defendant agreed to speak to Corporal DiTorrice. Corporal DiTorrice did not ask the defendant to sign a "Waiver of Rights" form. The WAPD does not use "Waiver of Rights" forms.

The interview of the defendant was conducted in a small room which was approximately 8' x 8' in size. It contained a small table and three chairs. WAPD Detective Jeff Nohlty participated in the interview. The defendant was not handcuffed during the interview, which lasted less than one hour. No audio recording or video recording was made of the interview with the defendant.

Corporal DiTorrice interviewed the defendant in English and the defendant had no problem carrying on the conversation. The defendant was "quiet, but cooperative." He was willing to answer most questions without a problem. He never asked to see a lawyer, nor did he ever ask to stop the questioning. The defendant did not ask for anything during the interview that Corporal DiTorrice had to deny.

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

-3-

Neither Corporal DiTorrice nor Detective Nohlty made any threats to the defendant during the course of the interview, nor were any promises made to him. Corporal DiTorrice never told the defendant that any statement he made would not be used against him. A law enforcement officer could tell a defendant that a statement would not be used against him to induce cooperation from that defendant. However, Corporal DiTorrice said that he would never make such a statement before he had actually taken a statement from a defendant.

Corporal DiTorrice prepared a written report of the defendant's statement to him about his sources and his willingness to cooperate. Corporal DiTorrice's report of this interview with the defendant is included in the WAPD report.

Corporal DiTorrice also prepared a one-page report on October 27, 2003, entitled, "Debriefing of Tony Cervera." This debriefing statement contains a more extensive rendition of Corporal DiTorrice's interview with the defendant. The debriefing report contains more confidential and extensive information, including the names of the defendant's sources for drugs. The debriefing report is more detailed and includes information which is not in the defendant's statement in the police report. The debriefing report does not state that the defendant was advised of his constitutional rights.

In a debriefing, a person may be told that a statement will not be used against him or her. However, the understanding in a debriefing is not always that the statement a person makes would not be used against that person. The term, "debriefing," does not mean that a statement would not be used against a person. Corporal DiTorrice never told the defendant that what the defendant said to him would not be used against him.

-4-

## Analysis

The defendant seeks suppression of statements he made while in custody. He asserts that he was not advised of his constitutional right to remain silent and to have legal counsel present during questioning. He further asserts that he did not waive his constitutional rights before being interrogated and that, in addition, law enforcement officers assured him that any statements he made would not be used against him. Therefore, the defendant asserts that any post-arrest statements made by him were neither informed nor voluntary.

The Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to counsel require police to follow certain procedural safeguards during custodial interrogations of a suspect. Miranda v. Arizona, 384 U.S. 436 (1966). Here, there is no dispute that the defendant was under arrest and in custody at the time he was questioned by law enforcement officers. Thus, the issues before the court are whether the defendant was advised of his Miranda rights and if so, did he voluntarily waive his rights.

With respect to Miranda rights, Corporal DiTorrice testified that he orally read the defendant his Miranda rights from a printed advice of rights card before he began to interview the defendant. After being advised of his rights, including his right to remain silent and his right to have an attorney, he asked the defendant if he understood his rights and wanted to talk to him. The defendant agreed to speak to the law enforcement officers. The interview was conducted in English. The defendant answered most questions without a problem and was quiet, but cooperative. He never requested a lawyer or asked that the interview cease. No threats or promises were made to the defendant during the course of the interview. The defendant was not advised that any statements he made to the officers would not be used

-5-

against him. Corporal DiTorrice did not ask the defendant to sign a "Waiver of Rights" form because the WAPD does not utilize such waiver forms.

While testifying, Corporal DiTorrice answered the questions posed to him in a straightforward manner. The court finds that Corporal DiTorrice was a credible witness. Accordingly, the court concludes that the defendant was advised of his Miranda rights prior to the commencement of the interview.

The court also must determine whether the defendant knowingly and voluntarily consented to waive his Miranda rights. It is well-established that a statement is not "compelled" within the meaning of the Fifth Amendment if an individual "voluntarily, knowingly and intelligently" waives his constitutional privilege. Miranda, 384 U.S. at 444. "The inquiry whether a waiver is coerced 'has two distinct dimensions.'" Colorado v. Spring, 479 U.S. 564 (1987) (quoting Moran v. Burbine, 475 U.S. 412, 421 [1986]). As the Court explained in Moran:

> First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

475 U.S. at 421 (internal citations omitted).

To determine whether a defendant voluntarily consented to waive his rights, the court must inquire whether, under the totality of the circumstances, law enforcement officers have overborne the will of the accused. Haynes v. State of Wash., 373 U.S. 503, 513-14 (1963); Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). The court in Schneckloth detailed the

-6-

factors to be considered when evaluating whether a defendant's "will was overborne" in the giving of statements:

> [T]he Court has assessed the totality of all the surrounding circumstances - both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account include the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.

412 U.S. at 226 (internal citations omitted).

In this case, the evidence shows that the defendant's decision to waive his constitutional rights was voluntarily made. The defendant asserts in his motion that his statement to police was involuntary in part because he was told that any statement he made would not be used against him. However, the defendant's assertion is not supported by the testimony presented at the hearing. Contrary to the defendant's contention, Corporal DiTorrice specifically testified that he did not tell the defendant that any statements he made would not be used against him. Moreover, there is no evidence or allegation of "coercion of a confession by physical violence or other deliberate means calculated to break [the defendant's] will." Colorado v. Spring, 479 U.S. at 573-74 (quoting Oregon v. Elstad, 470 U.S 298, 312 [1985]).

The evidence establishes that the defendant was not handcuffed during the interview. No threats or promises were made to obtain the defendant's consent. There is no indication that the defendant was physically assaulted. Corporal DiTorrice testified that the defendant was cooperative and answered most questions. He did not request an attorney or ask to stop the questioning.

Although Corporal DiTorrice prepared two reports of the statement given by the defendant – one that was included in the WAPD police report and the other a "Debriefing of

-7-

Tony Cervera" – there is no evidence that the statements were inconsistent. Rather, the statement included in the police report was less detailed and did not contain the confidential information and names of sources included in the "debriefing" of the defendant.

Although law enforcement officers conducting debriefings of defendants may advise them that any statement they make will not be used against them, Corporal DiTorrice unequivocally testified that he did not tell the defendant that his statement would not be used against him. He explained that he would not make such a statement to a defendant before he even had a chance to find out what the defendant knew.

Even if a defendant is advised that he was in serious trouble or facing significant charges, such information would not necessarily be sufficient for a court to conclude that the defendant's waiver of his rights was coerced. See, e.g., United States v. Ramirez, 112 F.3d 849, 853 (7th Cir. 1997) (telling a defendant "that cooperation with the police can result in a reduced sentence or other concession is not a promise and is not calculated to prevent the suspect from rationally considering whether or not to speak.").

In this case, there is no evidence of coercion by Corporal DiTorrice to induce the defendant to waive his rights. Absent evidence that the defendant's will was overborne and his capacity for self-determination critically impaired because of coercive police conduct, the court concludes that the defendant's decision to waive his Fifth Amendment privilege was voluntary. See Schneckloth, 412 U.S. at 226.

Furthermore, the court concludes that the defendant's waiver of his Fifth Amendment rights was knowingly and intelligently made. There is no indication that the defendant was unable to understand his constitutional rights or the questions posed to him. The interview was done in English and the defendant calmly answered most questions. Based on the testimony

-8-

Case 2:06-cr-00023-CNC    Filed 05/10/06    Page 8 of 9    Document 50

presented, the court concludes that the defendant's waiver of his rights was made knowingly and intelligently within the meaning of Miranda.

In sum, the court finds that the defendant was advised of and waived his Miranda rights. There is no evidence that the defendant was coerced or threatened in any way into waiving his rights. Accordingly, considering the relevant factors, the defendant's waiver of his rights was made knowingly and voluntarily. Therefore, the court will recommend that the defendant's motion to suppress statements be denied.

## CONCLUSION

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that the United States District Judge enter an order **denying** the defendant's motion to suppress statements. (Docket #40).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 10th day of May, 2006.

BY THE COURT:

   s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge